UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| DOROTHY TERRY and BLAIR GRAY, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | No. 21 C 5050 |
| v. | ) | |
| | ) | Judge Sara L. Ellis |
| DUPAGE HOUSING AUTHORITY and | ) | |
| KENDALL HOUSING AUTHORITY, | ) | |
| | ) | |
| Defendants. | ) | |

**ORDER**

    The Court grants Defendants DuPage Housing Authority's and Kendall Housing Authority's motion to dismiss [79]. The Court dismisses the third amended complaint with prejudice. Case terminated. See Statement.

**STATEMENT**

    Plaintiffs Dorothy Terry and her daughter Blair Gray bring this *pro se* lawsuit against Defendants DuPage County Housing Authority and Kendall Housing Authority ("KHA") for improperly removing Terry from the Family Self Sufficiency Program between 2008 and 2009, causing Terry's slip-and-fall on KHA property in 2012, and improperly changing Plaintiffs' housing choice voucher in 2022 in the wake of Terry's mother's death and while Terry awaited surgery. The Court dismissed Plaintiffs' second amended complaint against Defendants, concluding that it could not grant Plaintiffs relief for their time-barred allegations and that Plaintiffs had not sufficiently alleged a claim for discrimination under the Fair Housing Act ("FHA"), 42 U.S.C. § 3601 *et seq.* Doc. 73. Plaintiffs responded by filing a third amended complaint, in which they complain of violations of the Rehabilitation Act, 29 U.S.C. § 701 *et seq.*, the FHA, and various federal regulations. Plaintiffs also seek to recover under state law for the injury Terry suffered in 2012. Defendants again move to dismiss Plaintiffs' claims pursuant to Federal Rule of Civil Procedure 12(b)(6). In addition to defending their claims in their response, Plaintiffs also contend that Defendants retaliated against them in violation of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12203(a).

    A motion to dismiss under Rule 12(b)(6) challenges the sufficiency of the complaint, not its merits. Fed. R. Civ. P. 12(b)(6); *Gibson v. City of Chicago*, 910 F.2d 1510, 1520 (7th Cir. 1990). In considering a Rule 12(b)(6) motion, the Court accepts as true all well-pleaded facts in the plaintiff's complaint and draws all reasonable inferences from those facts in Plaintiffs' favor. *Kubiak v. City of Chicago*, 810 F.3d 476, 480–81 (7th Cir. 2016). To survive a Rule 12(b)(6) motion, the complaint must assert a facially plausible claim and provide fair notice to the defendant of the claim's basis. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atl. Corp. v.*

1

*Twombly*, 550 U.S. 544, 555 (2007); *Adams v. City of Indianapolis*, 742 F.3d 720, 728–29 (7th Cir. 2014). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

Plaintiffs allege as follows: Terry has been disabled since 1992. Since 2004, Terry has participated in the U.S. Department of Housing and Urban Development housing choice voucher program, which provides subsidies to eligible families for affordable housing, typically through local public housing agencies like KHA. In 2008, KHA terminated Terry from the Family Self Sufficiency Program, which caused the loss of Terry's housing voucher for nine months and Plaintiffs' eviction from their rental. Although Terry regained her voucher in 2009, Defendants did not reinstate her into the Family Self Sufficiency Program, with the collateral ramifications of the termination continuing to follow her to date.

As Terry continued to have difficulties finding a place to live, she visited KHA's offices in 2012 to seek a letter of compromise. While on the property, Terry fell and injured her meniscus. She filed an incident report, which KHA ignored. A decade later, in December 2022, Terry had knee replacement surgery after living with chronic pain and a number of musculoskeletal disorders in her left knee.

On May 5, 2022, Terry's mother, Beulah Terry, passed away after a battle with cancer. Plaintiffs notified Defendants of this unfortunate event. In response, Defendants informed Plaintiffs in a series of letters that their housing voucher would change due to the reduction in family size, functionally raising their rent from $376 per month to $822 per month. Defendants also informed Plaintiffs that due to the change in family composition, Terry's housing choice voucher had changed from a three-bedroom to a one-bedroom voucher. From May to August 2022, Plaintiffs emailed KHA's program coordinator and program manager and sent accommodation letters from Terry's doctor, protesting the rent increase and stating that they could not move due to Terry's upcoming knee surgery. On June 14, 2022, Terry wrote in an email message "I am on a fixed income and disabled how can I move. I am scheduled for 2nd surgery on July 28th." Doc. 74 ¶ 31. Gray could not complete her last semester at the Chicago School of Professional Psychology and also had to quit her job as a caregiver because a KHA employee told her it could jeopardize Terry's housing voucher. Terry's health has declined because of the stress and anxiety of the situation.

Turning to Defendants' motion to dismiss, the Court first considers the timeliness of any claims arising out of Terry's allegedly wrongful termination from the Family Self Sufficiency Program and her 2012 injury. The Court already found that the statute of limitations bars these claims. *See* Doc. 73 at 2–3 (dismissing as time-barred any claims based on the 2008 removal from the Family Self Sufficiency Program and the 2012 injury). In Plaintiffs' response, however, they contend that the continuing violation doctrine saves these claims from dismissal. The FHA provides that claims must be filed "not later than 2 years after the occurrence or the termination of an alleged discriminatory housing practice . . . whichever occurs last." 42 U.S.C. § 3613(a)(1)(A). This language codifies the continuing violation doctrine for FHA claims that the Supreme Court recognized in *Havens Realty Corp. v. Coleman*: "where a plaintiff, pursuant to the Fair Housing Act, challenges not just one incident of conduct violative of the Act, but an

2

unlawful practice that continues into the limitations period, the complaint is timely when it is filed within [two years] of the last asserted occurrence of that practice." 455 U.S. 363, 380–81 (1982) (footnote omitted). While the Seventh Circuit has not applied the continuing violation doctrine to ADA or Rehabilitation Act claims, at least one court in this district has recently done so. *See Access Living of Metro. Chi., Inc. v. City of Chicago*, --- F. Supp. 3d ----, 2024 WL 4346630, at *7 (N.D. Ill. Sept. 30, 2024). The Court finds it appropriate to do the same. Here, the continuing violation doctrine does not save Plaintiffs' complaints that Defendants wrongfully terminated Terry from the Family Self Sufficiency Program in 2008, which caused her to lose her housing voucher for a period of time, be evicted, and have to pay extra rent. These claims stem from a discrete, completed act, the 2008 termination, which falls well outside of the two-year statute of limitations. *See id.* ("If Access Living were to claim that it—or its clients—were suffering the ongoing *effects* of non-compliant housing, like a building having a defective elevator, much of the claim would likely not fit the continuing-*violations* exception."). But Plaintiffs also arguably challenge Defendants' ongoing failure to reinstate Terry into the Family Self Sufficiency Program, not just that she continues to suffer the "continual ill-effects arising from a single (or multiple) *past* violation." *Id.* The statute of limitations does not bar this aspect of her discrimination claims, as Terry has yet to be reinstated into this program.[1] *Id.* ("[A]lleging that there is an ongoing, systemic failure of the City to fulfill its contractual and statutory obligations is something altogether different. This kind of failure is ongoing and not a single isolated incident.").

That said, the continuing violation doctrine does not save any claim based on Terry's 2012 fall on KHA property. Under Illinois law, an action against a local entity, like KHA, must be "commenced within one year from the date that the injury was received or the cause of action accrued." 745 Ill. Comp. Stat. 10/8-101. Here, Terry's claim against KHA related to her fall accrued on the day of her fall. *See Feltmeier v. Feltmeier*, 207 Ill. 2d 263, 278 (2003) ("Generally, a limitations period begins to run when facts exist that authorize one party to maintain an action against another."). The fact that her injury lingered does not change the accrual date. *See id.* at 278–79 ("A continuing violation or tort is occasioned by continuing unlawful acts and conduct, not by continual ill effects from an initial violation. Thus, where there is a single overt act from which subsequent damages may flow, the statute begins to run on the date the defendant invaded the plaintiff's interest and inflicted injury, and this is so despite the continuing nature of the injury." (citation omitted)); *see also United States v. Midwest Generation, LLC*, 720 F.3d 644, 648 (7th Cir. 2013) ("[E]nduring consequences of acts that precede the statute of limitations are not independently wrongful.").

Turning to the sufficiency of allegations, the Court considers whether Plaintiffs have stated any claims for discrimination, failure to accommodate, or retaliation under the FHA, Rehabilitation Act, and ADA. A discrimination claim under the Rehabilitation Act or ADA requires Plaintiffs to allege that (1) they are qualified individuals with a disability; (2) Defendants denied them the benefits of their services, programs, or activities, or otherwise subjected them to discrimination; and (3) the denial or discrimination occurred by reason of their

---

[1] The fact that Plaintiffs may have known of a claim many years ago based on Defendants' failure to reinstate Terry into the Family Self Sufficiency Program does not matter, as the Court finds it "improper to read into the [FHA's] limitations provision a notice restriction that does not appear in its text." *Cnty. of Cook v. Wells Fargo & Co.*, 335 F.R.D. 166, 168 (N.D. Ill. 2020).

3

disability. *Moore v. W. Ill. Corr. Ctr.*, 89 F.4th 582, 594 (7th Cir. 2023).[2] Similarly, a discrimination claim under the FHA requires a showing "that the defendant discriminated against plaintiff 'in the terms, conditions, or privileges of sale or rental of a dwelling, or in the provision of services or facilities in connection with such dwelling' because of a handicap of the buyer or renter, person intending to reside in the dwelling, or any person associated with the buyer or renter." *McGrath v. Dunecrest Condo. Ass'n*, No. 3:20-CV-656, 2021 WL 1930052, at *6 (N.D. Ind. May 13, 2021) (quoting 42 U.S.C. § 3604(f)(2)). Here, Terry pleads that she has a disability.[3] Plaintiffs further allege that Defendants have refused to reinstate Terry into the Family Self Sufficiency Program and changed Plaintiffs' housing voucher in 2023 after Terry's mother died, causing them to fall behind in rent. As the Court previously found, however, Plaintiffs' allegations indicate that the 2023 changes to the housing voucher occurred not because of Terry's disability but rather because of Terry's mother's death, which reduced their family size and the voucher amount. *See* Doc. 73 at 4; Doc. 74 ¶¶ 34–35. Additionally, nothing in the third amended complaint suggests that Defendants' failure to reinstate Terry into the Family Self-Sufficiency Program occurred by reason of her disability. Therefore, Plaintiffs have again failed to allege any viable discrimination claim.

Moving on to the accommodation claims, a claim for failure to accommodate under the FHA requires the plaintiff to allege that she suffers from a disability and "requested and was denied an accommodation that was both reasonable and necessary to afford [her] an equal opportunity to use and enjoy [her] dwelling." *United States v. WHPC-DWR, LLC*, 491 F. App'x 733, 736 (7th Cir. 2012) (citing *Wis. Cmty. Servs., Inc. v. City of Milwaukee*, 465 F.3d 737, 749 (7th Cir. 2006)). The requirements for an accommodation claim under the ADA and Rehabilitation Act are essentially the same as that under the FHA, and so the Court again analyzes them together. *See Oconomowoc Residential Programs v. City of Milwaukee*, 300 F.3d 775, 783 (7th Cir. 2002). The reasonableness of an accommodation is a "highly fact-specific inquiry and requires balancing the needs of the parties." *Id.* at 784. The necessity of an accommodation involves determining whether a plaintiff "will be denied an equal opportunity to obtain the housing of her choice" without the accommodation. *Wis. Cmty. Servs.*, 465 F.3d at 749. This inquiry "limits the accommodation duty," "requir[ing] only accommodations necessary to ameliorate the effect of the plaintiff's disability so that she may compete equally

---

[2] The Seventh Circuit treats ADA and Rehabilitation Act claims in the same manner. *See Wagoner v. Lemmon*, 778 F.3d 586, 592 (7th Cir. 2015) (noting that the Rehabilitation Act "is functionally identical" to the ADA).

[3] Gray's acknowledgment that she does not have a disability precludes her from pursuing an ADA or Rehabilitation Act claim since she has no rights to assert of her own under these statutes and she cannot pursue a claim on her mother's behalf. *See Rawoof v. Texor Petroleum Co.*, 521 F.3d 750, 757 (7th Cir. 2008) ("[A] litigant cannot sue in federal court to enforce the rights of third parties."); *Act II Jewelry, LLC v. Wooten*, 301 F. Supp. 3d 905, 911 (N.D. Ill. 2018) ("Rule 17(a) provides that actions must be brought in the name of the real party in interest, which is the term used to describe the person who, under the applicable substantive law, holds the substantive rights at issue. It is not enough that a person stands to benefit from the suit; to be a real party in interest, the person must be the holder of the right or claim at issue." (citations omitted)). But Gray can nonetheless pursue an FHA claim because the FHA prohibits discrimination against a person residing in the same dwelling as a disabled individual or a person associated with the disabled individual, 42 U.S.C. § 3604(f)(1), and allows any "aggrieved person" to bring suit, 42 U.S.C. § 3613.

with the non-disabled in the housing market." *Id.* In other words, the Court considers whether, absent the accommodation, Defendants' actions hurt "handicapped people *by reason of their handicap*, rather than . . . by virtue of what they have in common with other people, such as a limited amount of money to spend on housing." *Id.* (alterations in original) (quoting *Hemisphere Bldg. Co. v. Vill. of Richton Park*, 171 F.3d 437, 440 (7th Cir. 1999)); *see also Selyutin v. Bd. of Dirs. of Skokie Garden Condo. Ass'n*, No. 18 C 04572, 2019 WL 13247481, at *2 (N.D. Ill. Dec. 18, 2019) (necessity of accommodation "hinges on the following question: '[will] the desired accommodation . . . ameliorat[e] the effects of the [plaintiff's] disability'?" (alterations in original) (citation omitted)). Although not entirely clear from the third amended complaint, it appears that Plaintiffs contend that Defendants should have provided them with a higher subsidy amount given Terry's disability. But Plaintiffs have not pleaded anything that would suggest that Defendants' failure to increase Plaintiffs' subsidy left them unable to "compete equally with the non-disabled in the housing market" because of Terry's disability as opposed to the common issue of having a limited amount of money to spend on housing. *Wis. Cmty. Servs.*, 465 F.3d at 749. Therefore, Plaintiffs have not sufficiently stated a failure to accommodate claim.

Finally, in their response to Defendants' motion to dismiss, Plaintiffs cite to 42 U.S.C. § 12203(a), seemingly styling Defendants' actions as retaliatory in violation of the ADA. Doc. 81 at 5. To state a claim for ADA retaliation, a plaintiff must allege a causal connection between a statutorily protected activity and an adverse action. *Mobley v. Allstate Ins. Co.*, 531 F.3d 539, 549 (7th Cir. 2008). Once again, however, the third amended complaint does not include facts supporting such a claim.[4] Presumably, Plaintiffs premise this claim on Terry's request for an accommodation. *See Cassimy v. Bd. of Educ. of Rockford Pub. Schs., Dist. No. 205*, 461 F.3d 932, 938 (7th Cir. 2006) ("[E]veryone agrees that he engaged in statutorily protected activity when he requested an accommodation."). But they do not include facts suggesting that Defendants took an adverse action against Plaintiffs because of the request for reasonable accommodation and so cannot proceed on such a claim.

The Court thus grants Defendants' motion to dismiss [58]. Because Plaintiffs have failed to state any actionable claims despite having had four opportunities to do so, the Court finds further amendment would be futile and dismisses this case with prejudice. *See Camasta v. Jos. A. Bank Clothiers, Inc.*, 761 F.3d 732, 734–35 (7th Cir. 2014) (affirming dismissal with prejudice of first amended complaint after initial dismissal without prejudice); *Pirelli Armstrong Tire Corp., Retiree Med. Benefits Tr. v. Walgreen Co.*, No. 09 C 2046, 2010 WL 624709, at *1 (N.D. Ill. Feb. 18, 2010) (dismissing amended complaint with prejudice after previous dismissal of ICFA and unjust enrichment claims without prejudice), *aff'd*, 631 F.3d 436 (7th Cir. 2011).

Date: November 5, 2024 /s/ Sara L. Ellis

---

[4] Defendants argue that Plaintiffs did not specifically identify a retaliation claim in their third amended complaint and so cannot raise it in their response to the motion to dismiss. While a plaintiff cannot amend a complaint to state new claims in her response to a motion to dismiss, *Smith v. Dart*, 803 F.3d 304, 311 (7th Cir. 2015), a plaintiff need not include a citation to every statute on which she bases her claim in her complaint and instead need only plead sufficient facts that would give rise to a right to relief, *Hatmaker v. Mem'l Med. Ctr.*, 619 F.3d 741, (7th Cir. 2010). The Court thus considers whether the facts alleged in the third amended complaint give rise to a retaliation claim without finding that Plaintiffs waived such a claim by failing to specifically identify it in their third amended complaint.